IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                Crim. No. 19-00415 MV

CARLOS ALFREDO GUTIERREZ-
MAYAGOITIA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Carlos Alfredo Gutierrez-Mayagoitia's Motion to Dismiss. Doc. 44. The government filed a Response to the Defendant's Motion to Dismiss the Indictment [Doc. 45] as well as a Notice of Decision in Another Matter [Doc. 48]. Mr. Gutierrez-Mayagoitia did not file a reply. Having considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and accordingly will be **DENIED**.

### BACKGROUND

On November 16, 2011, Mr. Gutierrez-Mayagoitia was contacted by Immigration and Customs Enforcement (ICE) agents and taken into ICE custody. Doc. 44 at 2. On November 23, 2011, he was issued a Notice to Appear. Doc. 45 at 1. One notice was issued to an address in Chaparral, New Mexico and a second notice was issued to an address in El Paso, Texas. Doc. 44 at 2. Both copies ordered Mr. Gutierrez-Mayagoitia to appear "on a date to be set at a time to be set." *Id.* at 3. On December 15, 2011, Mr. Gutierrez-Mayagoitia appeared before an Immigration Judge who ordered him removed to Mexico. Doc. 45 at 1. He was subsequently removed from

the United States on December 20, 2011. *Id*.

On September 17, 2017, Mr. Gutierrez-Mayagoitia was arrested in New Mexico for disorderly conduct and negligent use of a weapon. *Id*. A records check revealed that he was a national and citizen of Mexico and that he had previously been removed from the United States. *Id*. Mr. Gutierrez-Mayagoitia was scheduled to appear at the Albuquerque municipal court for the above chargers on November 6, 2017. *Id*. at 2. At that time, ICE agents approached him and when he admitted that he was a citizen and national of Mexico and that he had previously been removed, he was transported to the ICE office and fingerprinted. *Id*. On February 13, 2019, Mr. Gutierrez-Mayagoitia was charged in a one-count Indictment with Reentry of a Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b). Doc. 37.

## DISCUSSION

On March 11, 2019, Mr. Gutierrez-Mayagoitia filed the instant Motion. Doc. 44. He argues that because the Notice to Appear did not specify a time and date, the notice was defective. *Id*. at 3. Accordingly, he argues that the Immigration Judge who entered his Order of Removal lacked jurisdiction to hear his removal proceedings. *Id*. at 7. Because his removal is an essential element of his Reentry of a Removed Alien charge, he argues that the present Indictment must be dismissed. *Id*. at 3–7. In making this argument, Mr. Gutierrez-Mayagoitia relies on *Pereira v. Sessions*, 138 S.Ct. 2105, 2115 (2018). *Id*. He further argues that he has met the threshold requirements under 8 U.S.C. § 1326(d) to bring a collateral attack. *Id*. at 8–9.

On March 25, 2019, the government filed its Response. Doc. 45. The government argues that the Immigration Judge had jurisdiction irrespective of whether the Notice to Appear listed the date and time of the proceedings. *Id*. at 3. The government also contends that the Supreme Court's narrow holding in *Pereira* does not apply to this context. *Id*. at 6. Finally, the government argues

2

that Mr. Gutierrez-Mayagoitia failed to meet the threshold requirements to collaterally attack his removal order. *Id.* at 14. For the reasons stated below, the Court is persuaded that there are no grounds for dismissal of the Indictment.

**I.      Legal Standard**

An indictment is considered constitutionally sufficient if it: (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)). The sufficiency of an indictment should be "tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.*

The elements that the government must establish to convict an individual of an illegal reentry offense are: (1) the defendant was an alien; (2) who has previously been deported or removed from the United States; (3) and thereafter reentered the United States; (4) without permission. 8 U.S.C. § 1326. Under certain circumstances, a defendant may "mount a collateral attack against a prior deportation order in response to an illegal reentry prosecution." *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010). A defendant can challenge the legality of a deportation order only where: "(1) the alien exhausted any administrative remedies that may have been able to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *Id* (citing 8 U.S.C. § 1326(d)). Because there is a "presumption of regularity" for a final deportation, once the government establishes that the defendant was deported pursuant to an order, the burden shifts to the defendant to prove that all

three of § 1326(d)'s elements have been met. *Id*.

   II.   **Analysis**

           a. **The Notice to Appear Did Not Deprive the Immigration Judge of Jurisdiction**

Mr. Gutierrez-Mayagoitia argues that the "time and place of removal proceedings" is "integral information" that is essential to a Notice to Appear, and any Notice to Appear that fails to designate the time and place is not a "notice to appear under section 1229(a)." Doc. 44 at 5–6 (citing *Pereira*, 138 S.Ct. at 2113–14, 2116–17). He argues that an invalid Notice to Appear "cannot properly trigger the commencement of removal proceedings," and accordingly, the immigration judge never had jurisdiction over his removal proceedings. *Id*. at 7.

The government argues that 8 U.S.C. § 1229a, discussing removal proceedings, does not provide any mechanism or framework for how jurisdiction vests with the Immigration Judge. Doc. 45 at 3. Rather, jurisdiction with the Immigration Judge is controlled by regulation, as opposed to statute. *Id*. at 3–4. The government argues that jurisdiction vests when a charging document is filed, and a Notice to Appear need not include the date and time of the hearing in order for jurisdiction to vest, "so long as the alien is later informed of the time and place of the hearing." *Id*. at 4–5 (citing *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (B.I.A. 2018)). Furthermore, the government argues that *Pereira* is not controlling in this context as the narrow question decided by the Supreme Court in that case was whether a Notice to Appear omitting the time or place of the hearing triggered the stop-time rule for a cancellation of removal. *Id*. at 6–9.

Under the Immigration and Nationality Act of 1996 (INA), Congress granted Immigration Judges exclusive authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. 1229a(a)(1). Congress did not, however, address the procedure in which jurisdiction vests in an Immigration Court under this statute. The INA confers upon the

Attorney General the power to "establish such regulations" that the Attorney General "determines to be necessary for carrying out this section." 8 U.S.C. § 1103(g)(2). Accordingly, the Attorney General has promulgated a framework regulating proceedings in Immigration Court. 8 C.F.R. § 1003.13. The regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. 1003.14.(a). A Notice to Appear is specifically listed among the types of charging documents that will initiate proceedings before an Immigration Judge. 8 C.F.R. § 1003.13.

The regulations direct that a Notice to Appear should include specific information such as "the nature of the proceedings against the alien" and "the time, place, and date of the initial removal hearing, *where practicable.*" 8 C.F.R. §§ 1003.15, 1003.18 (emphasis added). Notably, the regulations do not incorporate the elements of the statutory definition of Notice to Appear under 8 U.S.C. § 1229(a)(1), requiring that the notice specify "[t]he time and place at which the proceedings will be held." *See* 8 U.S.C. § 1229(a)(1)(G)(i). If the time, place, and date are not included in the Notice to Appear, the "Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." 8 C.F.R. § 1003.18. Therefore, under the regulations, the inclusion of the time, place, and date of the hearing is not required in order to trigger the Immigration Court's jurisdiction.

Furthermore, the Court finds that Mr. Gutierrez-Mayagoitia's reliance on *Pereira* is misplaced. In that case, the Supreme Court was deciding the explicitly "narrow question" of whether a Notice to Appear that failed to specify the time or place of removal proceedings would trigger the stop-time rule. 138 S.Ct. at 2110. Under section 1229b, the Attorney General has the discretion to "cancel removal" and adjust the status of certain nonpermanent residents who meet

5

specific criteria, including being "physically present in the United States for a continuous period of not less than 10 years." *Id*. The continuous presence ends upon the service of Notice to Appear under § 1229a. *Id*. The Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1299a,' and so does not trigger the stop-time rule." *Id*. at 2113–14. However, the Court pointedly noted the narrow issue it was deciding in that case, thus cabining it to the context of cancellation of removal proceedings. In fact, the Tenth Circuit has recently rejected an attempt to expand *Pereira*'s holding "into a jurisdictional invalidation of any removal proceeding initiated by a notice to appear that lacks a time or place designation." *Soriano-Mendosa v. Barr*, No. 18-9535, 2019 WL 1531499, at *4 (10th Cir. Apr. 9, 2019). The Tenth Circuit, citing a recent Ninth Circuit decision, held that "*Pereira* was not in any way concerned with the Immigration Court's jurisdiction." *Id*. (quoting *Karingithi v. Whitaker*, 913 F.3d 1158, 1159 (9th Cir. 2019)).

Similarly, in *Matter of German Bermudez-Cota*, the Board of Immigration Appeals (BIA) held that a Notice to Appear that fails to specify the time and place of an initial removal hearing nevertheless "vest an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the Act, so long as a notice of hearing specifying this information is later sent to the alien."[1] 27 I. & N. Dec. at 447. The Tenth Circuit in *Soriano-Mendosa* deferred to the BIA's holding in *Bermudez-Cota*, stating "we see no jurisdictional significance in the failure to include a date and time in the notice to appear." *Soriano-Mendosa*, 2019 WL 1531499, at *4 (citing *Karingithi*, 913 F.3d at 1161–62; *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314–15 (6th Cir. 2018)). Therefore, *Pereira*'s narrow holding and the omission of the date and time in the Notice to Appear did not deprive the Immigration Court of jurisdiction in

---

[1] That opinion uses "section 239(a)" to refer to 8 U.S.C. § 1229(a).

this context. Furthermore, Mr. Gutierrez-Mayagoitia's presence at his removal hearing is indicative of the fact that he ultimately did receive notice of the date and time.

### b. The Indictment Should Not Be Dismissed

Mr. Gutierrez-Mayagoitia argues that in order to convict him of unlawful reentry in violation of 8 U.S.C. §§ 1326(a) and (b), the government must prove that he was previously deported, excluded, or removed, and departed the United States under a constitutionally valid order of removal comporting with due process requirements. Doc. 44 at 7 (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987)). He argues that because the government cannot show that there was a constitutionally valid order, which goes to an element of the illegal reentry offense, he could not have committed the offense and the Indictment must be dismissed. *Id*. at 8.

The government argues that it is only required to prove the fact of a prior removal, and the "lawfulness or validity" of a prior removal order is not an element of a reentry offense. Doc. 45 at 12. It argues that a defendant may not contest the lawfulness of a removal order as a defense to an illegal reentry charge under section 1326. *Id*. at 13 (citing *Mendoza-Lopez*, 481 U.S. at 834–35).

In *Mendoza-Lopez*, the Supreme Court was faced with the issue of whether a defendant who is prosecuted for illegal reentry under 8 U.S.C. § 1326 may challenge the validity of the underlying deportation order. 481 U.S. at 830. Specifically, the Court looked at whether a federal court must "*always* accept as conclusive the fact of the deportation order, even if the deportation proceeding was not conducted in conformity with due process." *Id*. at 834. The Court held that "[t]he text and background of § 1326 thus indicate no congressional intent to sanction challenges to deportation orders in proceedings under § 1326." *Id*. at 837. The Court went on to hold that in order to comport with due process requirements, there must be "*some* meaningful review of the

administrative proceeding." *Id*. at 837–38. Where the defects in the administrative proceeding foreclose judicial review of the proceeding, there must be an alternative means of obtaining judicial review if the administrative order may be used to "establish conclusively an element of a criminal offense." *Id*. at 838.

Here, there was nothing foreclosing judicial review of the immigration proceedings and Mr. Gutierrez-Mayagoitia failed to appeal the decision of the Immigration Judge, as will be discussed in greater depth below. He is seeking to avoid prosecution under § 1326 by "challeng[ing] his deportation order[]," which the Supreme Court expressly held is not permitted. *See id*. at 837. Accordingly, Mr. Gutierrez-Mayagoitia's argument that the Indictment should be dismissed because the government is unable to prove an element of its case under § 1326 fails.

### c. The Requirements for a Collateral Attack Under § 1326(d) Were Not Met

Subsection (d) of § 1326 sets out the threshold requirements that a defendant in an illegal reentry case must meet in order to collaterally attack his removal order: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Mr. Gutierrez-Mayagoitia again argues that the Immigration Judge lacked subject-matter jurisdiction over his removal proceedings, rendering them "a legal nullity." Doc. 44 at 8. He argues that any order in a constitutionally defective proceeding is fundamentally unfair, and further argues that the lack of subject-matter jurisdiction dispels the requirement that he exhaust administrative remedies or seek judicial review. *Id*. at 8–9. However, he does not cite authority for these propositions, other than pointing to authority stating that "a claim of subject-matter jurisdiction cannot be waived." *Id*. at 9 (citing Fed. R. Crim. P 12(B)(2)).

The government argues that Mr. Gutierrez-Mayagoitia fails to meet all three requirements under § 1326(d). Doc. 45 at 14. First, he did not seek relief against the removal order through the administrative process and did not appeal the Immigration Judge's decision to the BIA. *Id*. Second, he was not deprived of an opportunity for judicial review; instead, he failed to appeal the order. *Id*. at 15. Third, the government argues that fundamental fairness is a question of procedure, and it is clear that Mr. Gutierrez-Mayagoitia was ultimately provided notice of the hearing as he personally appeared at the hearing. *Id*. Therefore, the "alleged defect" did not cause him to miss the hearing or deprive him of the opportunity to be heard. *Id*. at 16.

A court in this district has recently examined this issue in *United States v. Ruiz-Gomez*, where the defendant made similar arguments to those made by Mr. Gutierrez-Mayagoitia in this case. In that case, Chief Judge Johnson determined that the defendant did not meet the requirements to bring a collateral attack. Memorandum Opinion and Order Denying Defendant's Motion to Dismiss Indictment at 9, *United States v. Ruiz-Gomez*, 19-CR-00416-WJ (D.N.M. Apr. 22, 2019). In addressing the §1326(d) requirements, the court noted that courts performing the collateral attack analysis "ordinarily should address the initial test of exhaustion of administrative [sic] remedies before going on to the other two tests." *Id*. at 8 (quoting *United States v. DeLeon*, 444 F.3d 41, 45 (1st Cir. 2006)). To satisfy the exhaustion requirement under § 1326(d), a defendant "must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." *Id*. (quoting *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010)). The Tenth Circuit has held that "[a] defendant 'who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust his administrative remedies under § 1326(d)(1).'" *United States v. Melendez*, 642 F.App'x 859, 862 (10th Cir. 2016) (quoting *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir.

9

2005)). Furthermore, "there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible." *Id*. (quoting *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004)).

Here, there is no evidence that Mr. Gutierrez-Mayagoitia filed a motion to reopen, appealed his deportation order, or pursued any other administrative remedies. Accordingly, he has failed to meet the first prong of the collateral attack analysis. All three prongs must be met to collaterally attack the underlying removal order. *See United States v. Varela-Cias*, 425 F.App'x 756 (10th Cir. 2011). Because Mr. Gutierrez-Mayagoitia failed to exhaust his administrative remedies, the Court need not reach the second or third prong.

## CONCLUSION

The Court, having found that the Immigration Judge had jurisdiction over Mr. Gutierrez-Mayagoitia's removal proceedings, that his Notice to Appear was not defective, and that he failed meet the § 1326(d) requirements to collaterally attack his removal order, finds that the Indictment should not be dismissed. **IT IS THEREFORE ORDERED** that Mr. Gutierrez-Mayagoitia's Motion to Dismiss [Doc. 44] is hereby **DENIED**.

ENTERED this 24th day of May, 2019.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE